UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GREGORY T. JACKSON,

                          Plaintiff,

      v.                                                        DECISION and ORDER

SENECA FOODS CORP.,                                09-CV-6241-CJS

                        Defendant.

_____

**APPEARANCES**

| | |
|---|---|
| For Plaintiff: | Gregory T. Jackson 11-B-1261, *pro se*<br>Auburn Correctional Facility<br>P.O. Box 618<br>Auburn, NY 13021 |
| For Defendants: | Thomas E. Brydges, Esq.<br>Jaeckle Fleischmann & Mugel, LLP<br>Avant Building, Suite 900<br>Buffalo, NY 14202 |

**INTRODUCTION**

**Siragusa, J.** This is an action in which the *pro se* Plaintiff is suing his former employer for alleged workplace discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. Now before the Court is Defendant Seneca Foods' motion for summary judgment, filed February 16, 2010, ECF No. 19. The application for summary judgment is granted.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Defendant Seneca Foods Corp.'s ("Seneca Foods") Statement of Undisputed Facts, ECF No. 19-2.

Seneca Foods is in the business of canning and freezing vegetables, and it operates twenty–two facilities throughout the United States. On June 5, 2007, Plaintiff was hired as a forklift operator at Seneca Foods' facility in Geneva, New York. Prior to his hire, Plaintiff had worked as a forklift operator at two other businesses for periods of a few months each. At Seneca Foods, Plaintiff was given formal classroom training and practical training on forklift operation prior to assuming his duties.

In addition to its vegetable processing operation, the Geneva facility operates a distribution center where product from the Geneva plant and other Seneca Foods' plants is stored and shipped to customers. Plaintiff was assigned to load and unload trailers at the distribution center's shipping dock on the second shift, where he was supervised by Gary Britt ("Britt"). It was Seneca Foods' expectation that, within a month, a new forklift operator should attain sufficient proficiency to load or unload a trailer in one hour or less. Asbrand Aff. ¶ 7. Plaintiff frequently took one-and-one-half to two hours to complete this task. *Id*.

On July 24, 2007, Plaintiff hit a warehouse support pole, resulting in damage to the forklift he was driving. Defendant issued him a Notice of Citation and Verbal Warning, which Plaintiff signed. Just over a week later, on August 2, 2007, Plaintiff abruptly stopped his forklift while loading a truck, causing a pallet of canned vegetables to fall to the ground, where many were damaged. Britt prepared an incident report, which Plaintiff signed.

Thereafter, Plaintiff was absent from work, from September 6, 2007, to February 26, 2008, due to a non-work related disability. Two days after his return, on February 28, 2008, the pallet on Plaintiff's forklift came into contact with another forklift, requiring that some product be repackaged. Asbrand Aff. ¶ 10, Ex. 7. Britt issued an incident report, which Plaintiff signed.

As Plaintiff continued to work on the shipping dock, his times for loading and unloading trucks did not significantly improve. Defendants decided to transfer Plaintiff from the shipping dock to the "Case and Label" operation where he was to drive a "tugger" and pull a train of carts loaded with product to and from the line. The transfer took place in late March or early April of 2008, and Plaintiff was assigned to the night shift, where he was supervised by Neil Hoppough ("Hoppough"). Three incidents involving Plaintiff's operation of a tugger occurred in quick succession.

On April 10, 2008, Plaintiff scraped a steel support post with a loaded train cart. On April 29, 2008, he struck and damaged a pallet of label line supplies. On April 30, 2008, he failed to unhook a safety chain running from the tugger to the cart train, damaging the hook on the cart when he drove away. Hoppough issued incident reports for each occurrence, all of which Plaintiff signed.

Plaintiff received a Notice of Citation, designated as a written warning, on or about May 1, 2008. The Notice listed the four safety violations that had occurred in 2008, since Plaintiff returned from leave. Defendant wrote that the incidents "have been without injury or massive damage, but a pattern like this could lead to a major incident—you must be much more careful, Immediately!" Asbrand Aff. Ex 8 (emphasis and capitalization in original). The Notice also warned that further violation could result in discipline, including

suspension or termination. *Id*. Plaintiff signed the Notice.

Approximately two weeks later, Hoppaugh issued Plaintiff two more incident reports: for failing to sound his horn while entering an intersection on May 14; and for sideswiping a loaded pallet causing damage to labeled product on May 15, 2008. Plaintiff initialed both reports. Because of these further safety violations, Plaintiff was issued a Notice of Citation on May 16, 2008, which stated "[t]his unsafe type of action can not continue as you may cause injury to you and or a co-worker." Asbrand Aff. Ex. 9. The Notice, which Plaintiff signed, contained the same warning relative to further violations and was designated as a final written warning. *Id*.

On May 16, 2008, Plaintiff failed to attach the safety chains from his tugger to the carts he was towing. As he made a turn, the carts detached from the tugger and damaged product stacked on the floor. A Notice of Citation was issued on May 19, 2008. Plaintiff was suspended through May 22, 2008, and advised that he should call Mark Asbrand, who was then the Warehouse Manager at the Geneva facility, prior to the start of his shift on May 22, 2008. Hoppough informed Plaintiff that his record would be reviewed and he could be terminated.

The Geneva facility's plant manager, warehouse manager, case and label manager, and human resources manager were each of the opinion that Plaintiff's employment should be terminated. Pursuant to corporate practice, they forwarded that recommendation to Seneca Foods' corporate human resources manager, Jim Uttech, located in Wisconsin, who approved the termination.

Plaintiff met with Asbrand at the Geneva facility on or about May 22, 2008, and was informed that he was being terminated due to his record of accidents and safety violations. Plaintiff then stated he felt the termination was discriminatory and that he had been treated disrespectfully and made to feel like a peon during his employment. Pl's Dep. 92:9-16. Plaintiff had not previously made any claim or complaint of race discrimination in the workplace.

On or about June 24, 2008, Plaintiff filed an administrative complaint with the New York State Division of Human Rights alleging that he was "one of only 2-3 persons of color" working on his assigned shift, and stating his belief that white employees had committed similar safety violations but were not terminated. Hadyk Aff., Ex. 2. This action followed, on May 13, 2009, when Plaintiff filed his complaint in which he claims Defendant intentionally subjected him to unequal terms and conditions of his employment because of his race. Compl. ¶¶ 13-15.

On February 16, 2010, Defendant moved for summary judgment, maintaining it had a legitimate, non-discriminatory reason for terminating Plaintiff, who cannot show that the termination occurred under circumstances suggesting that race was a factor in the decision-making process. Plaintiff did not file a response to the motion or seek an extension of time in which to do so. Four months after his response was due, Plaintiff moved for appointment of counsel. That motion was denied on March 30, 2011, in a Decision and Order which also advised Plaintiff that Defendant's motion remained pending. ECF No. 31. Again, Plaintiff did not file, or seek to file, a response. Accordingly, the motion is now considered as unopposed.

## STANDARDS OF LAW

*Rule 56*

The Second Circuit standard applicable to unopposed summary judgment motions is as follows:

> Federal Rule of Civil Procedure 56 provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered against" him. Fed. R. Civ. P. 56(e) . . . .[1] This Court has made clear, however, that where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker*, 274 F.3d at 681. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id*. (internal quotation marks omitted); *Giannullo*, 322 F.3d at 141 (noting that the "non-movant is not required to rebut an insufficient showing"). Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local] Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion. *Giannullo*, 322 F.3d at 143 n. 5 (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").
>
> An unopposed summary judgment motion may also fail where the undisputed facts fail to "'show that the moving party is entitled to judgment as a matter of law.'" *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996) (*per curiam*) (*quoting* FED. R. CIV. P. 56(c)).

*Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company*, 373 F.3d 241, 244 (2d Cir. 2004) (*citing Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001); *Giannullo v. City of N.Y.*,

---

[1] The Court notes that, after the Second Circuit's decision in *Vermont Teddy Bear*, the text of Rule 56 was amended. That the quotation above is no longer accurate is of no consequence, however, as the substance of Rule 56(e) remains unchanged.

322 F.3d 139 (2d Cir. 2003)).

### *Title VII*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir. 1999) (citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006).

Disparate treatment discrimination claims are analyzed using the well-settled *McDonnell Douglas*[2] burden-shifting framework:

> A plaintiff establishes a prima facie case of discrimination by showing that he or she (1) is a member of a protected [group] . . . .; (2) was qualified to perform the duties required by the position; (3) was subjected to an adverse employment action; and (4) the adverse employment action occurred in circumstances that gave rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).

*Bringley v. Potter*, No. 07-CV-6618 CJS, 2011 U.S. Dist LEXIS 133332, 39 (W.D.N.Y. Nov. 18, 2011).

Once the plaintiff presents a *prima facie* case,[3] the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).

[3] "A plaintiff's burden of establishing a *prima facie* case is *de minimis*. The requirement is neither onerous, nor intended to be rigid, mechanized or ritualistic." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 467 (citations and internal quotation marks omitted).

Ed.2d 207 (1981). Upon the defendant's articulation of a legitimate, non-discriminatory reason, the presumption of discrimination arising from the plaintiff's *prima facie* showing "'drops out of the picture.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)); *see Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Assuming that a plaintiff establishes a *prima facie* case, and that the defendant provides a non-discriminatory reason for the employment action, the third tier of the *McDonnell Douglas* test requires the plaintiff "to produce sufficient evidence to support a rational finding that the non-discriminatory business reasons proffered by the defendant for the challenged employment actions were false." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 470. If the plaintiff succeeds, such evidence may, or may not, establish the additional required proof of discriminatory intent:

> "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason…is correct.' In other words, 'it is not enough…to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'"

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (quoting *Reeves*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's*, 509 U.S. 502 at 524)). "The relevant factors…'include the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'" *Id*. (quoting *Reeves*, 130 S. Ct. 2097 at 2109).

## ANALYSIS

Defendant concedes that Plaintiff suffered an adverse job action such that the third element of a *prima facie* case is established, but denies that Plaintiff has met the first, second and fourth elements. The Court has reviewed the record in the light most favorable to Plaintiff and agrees that Plaintiff has failed to show that the circumstances of his termination give rise to an inference of discrimination.

As to the first element, Defendant urges that even under the liberal pleading standards afforded *pro se* litigants, Plaintiff does not identify his race in the Complaint and, so, has not properly pleaded membership in a protected group. In assessing the sufficiency of pleadings, the Court may properly consider any documents attached to the complaint as exhibits or incorporated by reference therein; matters of which judicial notice may be taken; or documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2002); *see also*, *Pifko v. CCB Credit Services, Inc.*, No. 09-CV-3057, 2010 U.S. Dist. Lexis 69872, at *6 (E.D.N.Y. July 7, 2010). Plaintiff's race, African-American, is clearly stated in his administrative complaint. In addition, the Division of Human Rights' conference notes confirm that Defendant identifies Plaintiff as African-American. These documents, attached to the Complaint, are sufficient to establish the first element of Plaintiff's *prima facie* case.

Defendant next argues that, due to Plaintiff's documented work incidents, he cannot establish that he was qualified for his job as a fork lift/lift truck operator. This argument improperly conflates the issues of qualifications and actual job performance. *See Gregory v. Daly*, 243 F.3d 687, 696-97 (2d Cir. 2001) (the qualification prong is distinct from the

issue of whether the qualified employee's performance is so dissatisfactory that it provides a legitimate reason for termination); *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) (a plaintiff need only make a minimal showing that he possesses basic skills necessary to perform his job). Moreover, it is clear from Defendant's own exhibits that Plaintiff satisfactory completed the one-day training it required for the position. Defendant issued Certificates of Training relative to Plaintiff's participation in both its classroom program and operational program, with the trainer specifically noting that Plaintiff possessed "excellent handling abilities." Asbrand Aff., Ex. 4. For purposes of the *prima facie* case, this is a sufficient basis from which to conclude that Plaintiff possessed the qualifications Defendant required for the position.

Where Plaintiff's *prima facie* case fails is on the fourth element. In this regard, the Court finds that Plaintiff has not offered any evidentiary proof to support his conclusory belief that he was treated differently than similarly-situated white employees.

During his deposition, Plaintiff did identify two white employees, Alan Ike ("Ike") and Harold Ribble ("Ribble"), who he believed were treated more favorably. Pl's Dep. 117:3-8. He quickly acknowledged, however, that Ribble was terminated for some other, unspecified reason, *id*. 117:11-12, and he does not offer any further basis for concluding that Ribble was somehow treated more favorably. As for Ike, Plaintiff merely opined that "[h]e probably has a hundred violations of safety right now" but is still employed. This unsupported assertion is not sufficient to meet even the *de minimus* requirements for a *prima facie* showing. During his deposition, Plaintiff noted his request to Defendant for information on all safety violations at the Geneva facility, *id*. 117:15-17, and yet he has not offered evidence of violations by Ike or any other similarly-situated employee. In addition, Plaintiff

admitted the fact of each of his own violations, except the May 16 incident. Pl's Dep. 33, 35-36, 42, 44, 61-65, 78-79, 84. Even accepting Plaintiff's explanation—that, on May 16, he had attached the chain to the cart, but the hitch came loose causing the cart to damage product—the record is devoid of any concrete or circumstantial evidence that Defendant's decision to terminate Plaintiff's employment after this ninth incident was motivated by discriminatory intent. Accordingly, Plaintiff fails to make a *prima facie* showing of race-based employment discrimination.[4]

## CONCLUSION

For the reasons stated, Defendant's motion for summary judgment, ECF No. 19, is granted, and Plaintiff's complaint, ECF No. 1, is dismissed with prejudice. The Clerk is directed to enter judgment for Defendants and close this case.

IT IS SO ORDERED.

Dated: November 20, 2012
       Rochester, New York

    ENTER:

                                            /s/ Charles J. Siragusa
                                            CHARLES J. SIRAGUSA
                                            United States District Judge

---

[4] In an abundance of caution, Defendant also argues that Plaintiff cannot demonstrate the existence of a hostile work environment. Because Plaintiff did not exhaust his administrative remedies with respect to such a claim, nor make such a claim in his complaint and attachments, Defendant's argument need not be addressed.